No. 21-____

# United States Court of Appeals
# for the Federal Circuit

## In re:  NETFLIX, INC.,

Petitioner.

On Petition For A Writ Of Mandamus
To The United States District Court for the Eastern District of Texas
In Case No. 2:21-cv-00080
United States District Judge Rodney Gilstrap

## PETITION FOR WRIT OF MANDAMUS

Mark A. Lemley
DURIE TANGRI LLP
217 LEIDESDORFF STREET
SAN FRANCISCO, CA 94111
Telephone:   415-362-6666
Facsimile:    415-236-6300

Katherine E. McNutt
DURIE TANGRI LLP
953 EAST 3RD STREET
LOS ANGELES, CA 90013
Telephone:   213-992-4499
Facsimile:    415-236-6300

September 24, 2021   Attorneys for Petitioner
Netflix, Inc.

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 21- |
| **Short Case Caption** | In re Netflix, Inc. |
| **Filing Party/Entity** | Netflix, Inc. |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/24/2021

Signature: /s/ Mark A. Lemley

Name: Mark A. Lemley

**FORM 9. Certificate of Interest**

Form 9 (p. 2)
July 2020

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Netflix, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☑  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Netflix, Inc. v. CA, Inc., Case No. 3:21-cv-03649 (N.D. Cal.) |  |  |
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
|  |  |  |
|  |  |  |

## <u>CERTIFICATE OF INTEREST FOR NETFLIX, INC. (CONT'D)</u>

Pursuant to Federal Circuit Rule 47.4(a) and Federal Rule of Appellate Procedure 26.1, counsel for Petitioner Netflix, Inc. certifies the following law firms, partners, and associates have appeared on its behalf before the district court:

From **Sheppard, Mullin, Richter & Hampton LLP**:  Harper S. Batts, Christopher Scott Ponder.

From **Keker, Van Nest & Peters LLP**:  Sharif E. Jacob, Christina Lee, David Justin Rosen, Edward A Bayley, Emily A. Hasselberg, Hinh D. Tran, Julia L. Greenberg, Katie Lynn Joyce, Leo L. Lam, Matthias Andreas Kamber, Neha Sabharwal, Paven Malhotra, Robert A. Van Nest.

From **Gillam & Smith LLP**:  Melissa Richards Smith.

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF ARGUMENT AND RELIEF SOUGHT ............................1

II.    ISSUE PRESENTED ........................................................................3

III.   JURISDICTIONAL STATEMENT ......................................................3

IV.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL
       HISTORY .......................................................................................3

       A.   As One Court Has Already Recognized, This Dispute Belongs
            in the Northern District of California....................................3

       B.   Netflix Has Given the District Court Every Opportunity to Rule
            on Its Pending Motion to Dismiss...........................................5

       C.   The Facts Clearly Demonstrate that Venue Is Not Proper in the
            Eastern District of Texas .......................................................7

V.     LEGAL STANDARD ....................................................................10

VI.    REASONS THE WRIT SHOULD ISSUE...........................................11

       A.   There Is No Question That Netflix Should Prevail on Its
            Underlying Venue and Transfer Motion .............................11

            1.   It Is Settled Law That the District Court Should Not
                 Proceed with the Substantive Merits of the Case
                 Without Deciding a Pending Venue Motion ................11

            2.   Venue is Not Proper in the Eastern District of Texas ....14

            3.   Even If Venue Were Proper, the Case Should be
                 Transferred...................................................................16

       B.   Netflix Has No Alternative but to Seek Relief in this Court ..............18

       C.   Irreparable Injury and the Balance of Hardships Favor Netflix..........21

       D.   The Public Interest Favors a Stay....................................................27

VII.   CONCLUSION................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
  6 F.4th 1283 (Fed. Cir. 2021) ................................................................16

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ....................................................11, 26

*In re Bose*,
  848 F. App'x 426 (Fed. Cir. 2021) ........................................................23

*Bright Data Ltd. v. code200, UAB*,
  No. 19-cv-00396-JRG (E.D. Tex.) ........................................................30

*Brite Smart Corp. v. Google Inc.*,
  No. 14-cv-760-JRG-RSP (E.D. Tex.) ....................................................27

*Broadcom Corp. v. Netflix, Inc.*,
  No. 20-cv-00529 (C.D. Cal. Mar. 13, 2020) ..........................................3

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ............................................................16

*Cuozzo Speed Techs., LLC v. Lee*,
  136 S. Ct. 2131 (2016) ..........................................................................24

*Express Mobile, Inc. v. Atlassian Corp. PLC*,
  No. 20-CV-00805-ADA, 2021 WL 3355375 (W.D. Tex.) ..............27, 29

*In re Google Inc.*,
  No. 2015-138, 2015 WL 5294800 (Fed. Cir. July 16, 2015) ...........12, 14, 15, 22

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) ..............................................14, 15, 18

*Hampton v. Nicholson*,
  175 F. App'x 334 (Fed. Cir. 2006) ........................................................10

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) ........................................................................................ 10

*In re Horseshoe Entm't*,
    337 F.3d 429 (5th Cir. 2003) ......................................................................... 11

*Ikorongo Tex. LLC v. Uber Techs., Inc.*,
    No. 20-cv-843-ADA (W.D. Tex.) ..................................................................... 27

*Intri-Plex Techs., Inc. v. NHK Int'l Corp.*,
    No. 17-cv-01097-EMC (N.D. Cal.) ................................................................. 30

*In re Nintendo Co.*,
    544 F. App'x 934 (Fed. Cir. 2013) ...................................................... 11, 22, 28

*In re Nintendo of Am., Inc.*,
    No. 2014-00132 (Fed. Cir. May 29, 2014) (per curiam) .................................... 3

*Personalized Media Commc'ns, LLC v. Google LLC*,
    No. 19-cv-00090-JRG (E.D. Tex.) ............................................................ 13, 28

*In re SK hynix Inc.*,
    835 F. App'x 600, 601 (Fed. Cir. 2021) ................................................ 12, 21, 26

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    897 F.2d 511 (Fed. Cir. 1990) ................................................................. 10, 11

*In re TracFone Wireless, Inc.*,
    848 F. App'x 899 (Fed. Cir. 2021) ............................................... 12, 13, 22, 26

*Will v. Calvert Fire Ins. Co.*,
    437 U.S. 655 (1978) ........................................................................................ 20

**Statutes**

28 U.S.C. § 1295 ................................................................................................ 3

28 U.S.C. § 1331 ................................................................................................ 3

28 U.S.C. § 1338(a) ........................................................................................... 3

28 U.S.C. § 1651 ........................................................................................... 3, 10

35 U.S.C. § 101 ................................................................................................. 4

35 U.S.C. § 314(d) ...................................................................................24

**Other Authorities**

*Apple Inc. v. Fintiv, Inc.*
  IPR2020-00019, 2020 WL 2126495 (PTAB Mar. 20, 2020)
  (designated precedential May 5, 2020)................................................24, 25, 29

E.D. Tex. L.R. CV-72(c)..........................................................................13

Joshua R. Nightingale, *An Empirical Study on the Use of Technical
  Advisors in Patent Cases*, 93 J. PAT. & TRADEMARK OFF. SOC'Y
  400 (2011) ...........................................................................................22

*NHK Spring Co. v. Intri-Plex Techs., Inc.*,
  IPR2018-00752, 2018 WL 4373643 (PTAB Sept. 12, 2018)
  (designated precedential May 7, 2019)........................................................25, 30

*PTAB Procedural Denials and the Rise of § 314*, UNIFIED PATENTS (May
  13, 2020), https://www.unifiedpatents.com/insights/2020/5/13/ptab-
  procedural-denial-and-the-rise-of-314.........................................................29, 30

*Teso LT, UAB v. Luminati Networks Ltd.*,
  No. IPR2021-00122, Paper 12 (PTAB Apr. 20, 2021) ......................................30

## STATEMENT OF RELATED CASES

No appeals or other petitions involving the district court case at issue here have been before this or any other appellate court.  Netflix, Inc. ("Netflix") and its counsel is aware of the following case pending in this Court or any other court or agency that will directly affect or be directly affected by this Court's ruling in this case:

- *Netflix, Inc. v. CA, Inc.*, Case No. 3:21-cv-03649 (N.D. Cal.)

## I.     SUMMARY OF ARGUMENT AND RELIEF SOUGHT

This Court's law is crystal clear—district courts cannot proceed with the substantive merits of a patent case while ignoring a pending motion to dismiss or transfer the case.  But the district court here has done exactly that.  Not only has it ignored Netflix's pending motion to dismiss for lack of venue or for transfer under § 1404(a), it has also refused to rule on Netflix's motion to stay substantive proceedings until the venue issue has been decided.  Meanwhile, this case is barreling towards a claim construction hearing November 2 and close of discovery November 29, both of which will happen before Netflix's motion to dismiss or transfer is resolved.

The district court's actions flout this Court's orders.  This Court has repeatedly instructed district courts to resolve venue motions promptly and to refrain from proceeding with substantive matters like claim construction.  But some district courts, like the court below, continue their prior practice of setting an unrealistic schedule for litigating the merits without deciding dispositive venue motions, only to issue a pro forma denial the week or even the day before the scheduled claim construction hearing.  This has become an all-too-common practice in certain district courts.

The district court's failure to follow clearly established law is compounded by the fact that there is simply no way this case should be in the Eastern District of

Texas in the first place. The absence of venue in this case is clear and indisputable under established law. Netflix has no place of business in the Eastern District of Texas, and this Court has rejected the very theory of venue Plaintiffs assert. Even if it weren't, the case for transfer under § 1404 is overwhelming. This is, after all, a case between two California companies who have existing, related litigation that has already been transferred to the Northern District of California. The transferring court held "that the convenience of its witnesses, the parties' contacts with the forum, contacts with the forum related to the causes of action, and the difference in litigation costs favor transfer to the Northern District," Appx219, where Plaintiff and Defendant are both headquartered and where most of the evidence and witnesses are located.

The practice in some courts of giving lip service to this Court's orders while continuing to set early, aggressive merits deadlines, ignoring repeated requests to resolve dispositive venue motions, and litigating the merits of cases that should never have been filed there does not just flout the law. It also causes irreparable harm to companies like Netflix, who are deprived of the opportunity to litigate cases as the law provides and in many cases also wrongly deprived of the ability to pursue IPRs.

In analogous circumstances, this Court in *In re Nintendo of America, Inc.* stayed district court merits proceedings pending its review of the merits of a

2

transfer motion.  Order, *In re Nintendo of Am., Inc.*, No. 2014-00132 (Fed. Cir. May 29, 2014) (per curiam), ECF No. 34.  The Court should do the same here, requiring that the district court adhere to the law and decide threshold venue motions first rather than treating them as an afterthought to be slotted into an accelerated case schedule.

## II.    ISSUE PRESENTED

Should this Court issue a writ of mandamus requiring the district court to comply with well-established law and stay the merits proceedings in this case until it has resolved pending venue and transfer motion?

## III.    JURISDICTIONAL STATEMENT

This Court has jurisdiction over this case because the underlying case is a patent case.  *See* 28 U.S.C. §§ 1295, 1331, 1338(a).  This Court has jurisdiction over this petition for writ of mandamus under the All Writs Act, 28 U.S.C. § 1651.

## IV.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A.    As One Court Has Already Recognized, This Dispute Belongs in the Northern District of California

On March 13, 2020, Avago and Broadcom Corp. (both Broadcom Inc. subsidiaries) sued Netflix in the Central District of California on nine patents.  *See generally* Compl., *Broadcom Corp. v. Netflix, Inc.*, No. 20-cv-00529 (C.D. Cal. Mar. 13, 2020), ECF No. 1.  As is the case here, the Central District plaintiffs accused Netflix's streaming technology, Netflix's container management platform,

and third-party container software of infringing the asserted patents. Appx034-040. On June 8, 2020, Netflix moved to transfer the case to the Northern District of California and moved to dismiss four patents under 35 U.S.C. § 101. Appx017 (ECF Nos. 44-45).

On July 10, 2020, Judge Selna granted Netflix's motion to transfer, finding that the Northern District of California was the "center of gravity" of the dispute. Appx215. Judge Selna concluded that Netflix demonstrated "that the convenience of its witnesses, the parties' contacts with the forum, contacts with the forum related to the causes of action, and the difference in litigation costs favor transfer to the Northern District." Appx219. He noted that Netflix identified eighteen third-party witnesses who "would face inconvenience due to travel, lodging, and missed work were trial to be held in the Central District." Appx213. In finding the Northern District of California the "center of gravity" of the dispute, he also considered that "Broadcom Corp.'s headquarters and Avago's sole United States location are in the Northern District," Appx214, and that "the allegedly infringing products were designed, developed, and continue to be managed at the Los Gatos headquarters," where "'Netflix makes its product development and business management decisions' and staffs its management, engineering, and product design and development teams," Appx215 (citation omitted). As set forth below, each of these considerations applies equally here.

Upon transfer, the case was assigned to Judge Donato.  Appx026-027 (ECF Nos. 63, 71).  Netflix promptly renewed its motion to dismiss and moved for a stay pending IPR.  Appx028-029 (ECF Nos. 87, 109).  Judge Donato heard Netflix's motion to dismiss in December 2020, Appx028 (ECF No. 96), and indicated from the bench that he was inclined to grant the motion as to three of the four patents at issue, *see* Appx043-044.  Judge Donato granted Netflix's motion to dismiss as to those three patents on September 14, 2021.  Appx334-336.  The next day, Judge Donato also granted-in-part Netflix's motion to stay pending IPR.  Appx032 (ECF No. 161).

### B.    Netflix Has Given the District Court Every Opportunity to Rule on Its Pending Motion to Dismiss

On March 9, 2021, two and a half months after Judge Donato's suggestion that three of Plaintiffs' patents were ineligible, Plaintiffs sued Netflix in the Eastern District of Texas on five new patents, accusing the same technology that was at issue in the pending case in the Northern District of California.  *See* Appx046; *compare, e.g.*, Appx034, *with* Appx049-050.  The case was assigned to Judge Gilstrap, who referred pretrial proceedings to Magistrate Judge Payne for report and recommendation.  *See* Appx006 (between ECF Nos. 10-11).

On May 17, 2021, Netflix timely filed a motion to dismiss for improper venue or, in the alternative, for transfer to the Northern District of California.  Appx006 (ECF No. 26).  Despite the pending motion to dismiss or transfer, on July

15, 2021, the Court set an aggressive and unrealistic case schedule, including a *Markman* hearing for October 28, 2021 and jury selection for April 18, 2022. Appx008 (between ECF Nos. 54-55). Briefing on Netflix's motion to dismiss or transfer was completed on July 27, 2021, *see* Appx008 (ECF No. 61), and Netflix thereafter requested a hearing on its motion, Appx009 (ECF No. 78). After completion of briefing on its motion to dismiss or transfer, Netflix also filed three separate notices of supplemental authority. Appx009-010 (ECF Nos. 75, 79, 91).

On July 29, 2021, two days after the completion of briefing on its venue and transfer motion, Netflix filed an expedited motion requesting a stay of all proceedings pending the district court's resolution of Netflix's venue and transfer motion. Appx008 (ECF Nos. 62, 63). That same day, the parties jointly filed a motion for a docket control order in which Netflix asked the court to set a schedule where "all future deadlines are tied to the Court's ruling on Netflix's pending motion to dismiss or transfer" and argued that "discovery and claim construction should not proceed while a decision on its motion to dismiss or transfer is pending." Appx298-299. On August 2, 2021, four days after Netflix filed its motion to stay, the district court issued a Docket Control Order setting the remainder of the case schedule through trial without addressing Netflix's stay request. Appx300-305.

The parties filed a joint claim construction and prehearing statement on

6

August 30, 2021, in which Netflix requested that the district court "grant its motion for stay and set a pre-hearing conference for Thursday, September 9, 2021, at which time the Court may take up the status of Defendant Netflix, Inc.'s motion to dismiss or transfer." Appx326-327. On September 10, 2021, Netflix informed the court clerk that it does not consent to proceeding with the claim construction hearing while the motion to dismiss or transfer and motion to stay remain pending. *See* Appx329 n.2. Netflix filed an expedited motion to vacate all claim construction deadlines the same day. Appx328-330.

On September 14, 2021, the district court denied Netflix's expedited motion to vacate in a two-paragraph order that indicated the court intended to "address" the transfer motion but failed to mention the pending motion to dismiss or the pending motion to stay. Appx333. The same day, the court appointed a technical advisor, at the parties' expense, to assist it with claim construction. Appx331. The district court has not ruled or even scheduled a hearing on Netflix's motion to dismiss or transfer, and has not ruled or even scheduled a hearing on Netflix's motion to stay. The *Markman* hearing is currently set for November 2, 2021, Appx010 (after ECF No. 107) and fact discovery is set to close on November 29, 2021, Appx302.

### C.    The Facts Clearly Demonstrate that Venue Is Not Proper in the Eastern District of Texas

All parties to this case are based in the Northern District of California.

Netflix's principal place of business is in Los Gatos, California.  Appx182 ¶ 4.  Per the complaint, Plaintiffs CA and Avago are based in San Jose, California, in the same building as Broadcom, Inc.  Appx046, Appx169-172.  Likewise, the bulk (if not all) of the relevant evidence in this case is in the Northern District of California.  Netflix makes its product development and business management decisions at its Los Gatos, California headquarters, where its management, engineering, and product design and development staff are based.  Appx182 ¶ 5.  Netflix's technical documents are located in Los Gatos, and there are twenty-one Netflix employees with potentially relevant information in the Northern District of California.  Appx182-184 ¶¶ 6, 8.  There are also four inventors and thirteen potential third-party witnesses identified in that district, including patent prosecution counsel, prior artists, and former employees—all of whom are outside the subpoena power of Eastern District of Texas.  Appx184 ¶ 11, Appx166-167 ¶¶ 18–20.  It is unclear what, if any, evidence is located in the Eastern District of Texas, especially since neither Avago nor CA appears to be in good standing to do business in Texas.  *See* Appx166 ¶ 17, Appx173-178.

Netflix neither owns nor leases real estate in the Eastern District of Texas, and it employs only eight people who reside there.  Appx184-186 ¶¶ 13-18.  All work remotely from their homes, and none have been identified as having potentially relevant information.  Appx184-186 ¶¶ 14-18.  Netflix neither pays any

portion of their rent nor requires them to live there.  Appx184-186 ¶¶ 14-18.

In some locations, Netflix owns or leases data centers (called "Internet Exchange Points") that contain equipment owned by Netflix for the purpose of caching content for delivery.  Appx187 ¶ 33.  There are no such data centers in the Eastern District of Texas.  Appx187 ¶ 33.

Netflix also *gives* server hardware to third-party internet service providers ("ISPs"), who may install and use that hardware to deliver Netflix content to the ISPs' customers.  Under the transfer agreements between Netflix and the ISPs, Netflix irrevocably transfers ownership, title, and control of the hardware appliance specified in the related orders to the ISPs.  *See, e.g.*, Appx190 § 1; *see also* Appx196-206.  All servers that Netflix has transferred to ISPs in the Eastern District of Texas include the irrevocable transfer of both ownership and control. Appx187 ¶ 29, Appx190 § 1, Appx196-206.

The hardware comes preloaded with Netflix's software, but Netflix has no rights of any kind—e.g., oversight, access, or inspection—with respect to the hardware itself or the physical space in which the ISP chooses to deploy that hardware.  The ISPs may deploy the servers wherever they see fit.  Netflix neither has signs on any of its ISPs' buildings nor lists those buildings as Netflix locations. Appx187 ¶ 31.  And though the ISP must cease using the licensed software after expiration of the term specified in its Software License Agreement with Netflix,

the ISP may do whatever it wants with the hardware, which Netflix irrevocably transfers to the ISP. *See, e.g.*, Appx190 § 1; *see also* Appx196-206.

## V.     LEGAL STANDARD

28 U.S.C. § 1651(a) gives this Court the authority to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." This Court has adopted a three-pronged test for granting a writ of mandamus:

> (1) the party seeking issuance of the writ must have no other adequate means to attain the relief he desires; (2) the petitioner must satisfy the burden of showing that his right to issuance of the writ is "clear and indisputable"; and (3) the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Hampton v. Nicholson*, 175 F. App'x 334, 335 (Fed. Cir. 2006) (quoting *Cheney v. United States Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380-81 (2004)).

Several factors guide this Court's consideration of whether to stay district court proceedings: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). These "factors contemplate individualized judgments in each case," *Braunskill*, 481 U.S. at 777,

and each factor "need not be given equal weight," *Gencor*, 897 F.2d at 512.

Indeed, this Court has employed a flexible, sliding scale approach to analyzing

these factors. *See id.* at 513. Where, as here, the likelihood of success on the

merits is overwhelming, less evidence is needed that the balance of harms tilts in

Netflix's favor. *Id.*

## VI.    REASONS THE WRIT SHOULD ISSUE

### A.    There Is No Question That Netflix Should Prevail on Its Underlying Venue and Transfer Motion

While the district court has not yet ruled on the venue and transfer motion,

and Netflix therefore does not seek mandamus on that motion, a stay of litigation

pending resolution of that motion is appropriate because Netflix is overwhelmingly

likely to succeed on the ultimate merits of its venue and transfer motion.

#### 1.    It Is Settled Law That the District Court Should Not Proceed with the Substantive Merits of the Case Without Deciding a Pending Venue Motion

This Court's law is clear and unequivocal: "a trial court must first address

whether it is a proper and convenient venue before addressing any substantive

portion of the case." *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013);

*accord In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020) ("[O]nce a party

files a transfer motion, disposing of that motion should unquestionably take top

priority."); *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) ("[I]n our

view disposition of that [transfer] motion should have taken a top priority in the

handling of this case by the . . . District Court.").  Indeed, Judge Payne himself has been ordered by this Court not to conduct substantive proceedings while the parties await a ruling on whether the case even belongs in his court.  *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *2 (Fed. Cir. July 16, 2015).  And this Court has warned against "forcing defendants 'to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket.'"  *In re TracFone Wireless, Inc.*, 848 F. App'x 899, 900 (Fed. Cir. 2021) (quoting *In re Google*, 2015 WL 5294800, at *1).  To that end, this Court has regularly ordered district courts to stay all substantive proceedings—not just *Markman* hearings—pending resolution of venue and transfer motions.  *In re SK hynix Inc.*, 835 F. App'x 600, 601 (Fed. Cir. 2021) (directing district court to "stay all proceedings concerning the substantive issues of the case," including the *Markman* hearing, "until such time that it has issued a ruling on" the pending motion to transfer); *In re TracFone*, 848 F. App'x at 901 (ordering the district court to "stay all proceedings until such time that it issues a ruling on the motion to transfer. . . .").

The district court has ignored this clear law.  It not only set a claim construction briefing schedule and hearing for November 2, 2021, less than three

months after venue briefing was complete,[1] but it has also set a deadline for close of fact discovery four weeks later, on November 29, 2021. The result has been that the parties are being forced to actively litigate on a compressed schedule the merits of a case that doesn't belong in the Eastern District of Texas in the first place.[2]

And because this case has been assigned to a magistrate judge for a Report and Recommendation, even were Judge Payne to address transfer (and, presumably, venue) before the claim construction hearing, that would not resolve the motion. Either party can seek review of that recommendation before Judge Gilstrap, to whom this case is assigned. E.D. Tex. L.R. CV-72(c). Judge Gilstrap has in recent years taken several months to rule on such a motion, in some cases waiting until the eve of trial to decide a motion to transfer. *See, e.g.*, *Personalized Media Commc'ns, LLC v. Google LLC*, No. 19-cv-00090-JRG (E.D. Tex.), ECF Nos. 101, 185, 291, 425 (denying Google's motion to dismiss ten and a half months after briefing was complete, three months after claim construction order, and four and a half months before trial). But even if both courts acted as quickly

---

[1]  Plaintiffs conducted extensive discovery on the venue and transfer issues for a period of five weeks. *See* Appx007-008 (ECF Nos. 34, 48), Appx220.

[2]  It is well-established law that in considering transfer motions, "any familiarity that [the district court] has gained with the underlying litigation due to the progress of the case since the filing of the complaint is irrelevant when considering the transfer motion and should not color its decision." *In re TracFone*, 848 F. App'x at 901.

as possible, there is no practical way that Judge Gilstrap could review and rule on the Netflix's venue and transfer motion before the claim construction hearing and indeed before the close of fact discovery.[3]

## 2. Venue is Not Proper in the Eastern District of Texas

Any argument that proper venue in this case lies in the Eastern District of Texas is squarely foreclosed by *In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020). Plaintiffs advance the same venue allegations here that this Court found deficient in *Google*.

Plaintiffs cannot establish that Netflix has a "regular and established place of business" in the Eastern District of Texas. Netflix is a Delaware corporation with its principal place of business in Los Gatos, California. Netflix does not own or lease any real estate in the Eastern District. While some of its data is processed by ISPs that are located in the district, Netflix does not own or control those ISPs and has no rights to any physical space in any of the ISPs' locations. Appx184 ¶ 13. Netflix does not own the hardware appliances housed by the ISPs. *See, e.g.*, Appx190 § 1. And like the petitioner in *Google*, no Netflix employee has been

---

[3] A review of eleven recent cases in which Judge Gilstrap reviewed a magistrate's ruling on a motion to transfer shows that it took him an average of 80 days to rule on those motions. Based on this prior record, even were Judge Payne to issue his Report and Recommendation by the end of September—and there is no reason to think he will—Netflix could not expect Judge Gilstrap's ruling on venue until the latter half of December, and quite possibly as late as the end of March 2022.

regularly and physically present at an ISP facility. Based on nearly identical facts, *Google* already rejected the argument now advanced by Plaintiffs that "[t]he physical servers located in facilities in this District are regular-and-established places of business of Netflix." Appx048 ¶ 17; *In re Google*, 949 F.3d at 1343-45.

Just as in *Google*, Plaintiffs allege that: (1) Netflix contracts with ISPs to connect servers to residents of the District, Appx047 ¶ 13; (2) Netflix confirms that the ISP meets certain network requirements, Appx047 ¶ 15; (3) Netflix performs maintenance activities, Appx047 ¶ 15; and (4) the ISPs connect servers to the Internet to deliver cached content to residents in this District, Appx047 ¶¶ 16-17. This Court has already decided that these allegations, even when accepted as true, are insufficient to establish that Netflix has an agent in the Eastern District of Texas. *In re Google*, 949 F.3d at 1345-46.

If anything, the contracts between Netflix and the ISPs here give Netflix *less* control than Google had. Netflix, unlike Google, irrevocably transfers ownership, title, and control of the servers to the ISPs. *See* Appx190 § 1. While the hardware comes preloaded with Netflix software (which is separately licensed to the ISP and which Netflix operates and maintains), Netflix transfers control over the physical server and has no rights of any kind with respect to the hardware or the space in which the ISP may choose to use it. The ISPs are free to move the servers, use them for another purpose, or even turn them off entirely. If the *Google* ISPs—who

could not even *access* the GGC servers without Google's permission—were not agents of Google, then the ISPs at issue here are certainly not agents of Netflix. *See also Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289 (Fed. Cir. 2021) (retail store defendant is not agent of related non-store defendants when none "of the Non-Store Defendants exercise the degree of control over Stores employees required to find an agency relationship").

Nor does the fact that a handful of Netflix employees who have nothing to do with this case live in the district and sometimes work from home mean that Netflix has a regular and established place of business in the Eastern District of Texas. Netflix does not require them to live there, does not pay their rent, and their work is not work that must be done there. Appx184-186 ¶¶ 14-18. That does not constitute a regular and established place of business under this Court's precedent. *See In re Cray Inc.*, 871 F.3d 1355, 1365-66 (Fed. Cir. 2017) (finding lack of venue when the facts "merely show that there exists within the district a physical location where an employee of the defendant carries on certain work for his employer").

### 3. Even If Venue Were Proper, the Case Should be Transferred

Even if venue were proper in the Eastern District of Texas, there is no doubt that this case should be transferred to the Northern District of California on the basis of relevance, convenience, and fairness. Both Broadcom (the parent

company of CA and Avago) and Netflix are headquartered in the Northern District of California, and they have no obvious ties to Texas related to this litigation. Netflix has no office in the Eastern District of Texas, and its handful of employees there work out of their homes, are not required to live or work in the district, and have no information relevant to this case. Plaintiffs' only tie to Texas appears to be CA's office in Plano, which CA alleges is relevant solely because CA has a handful of employees there with general knowledge of the technology implicated in this suit. *See* Appx252-253.

Potential trial witnesses and evidence are also overwhelmingly located in California. Netflix has identified over two dozen employees and third-party witnesses with potentially relevant information in addition to several inventors of the asserted patents who are located in California. Travel to the Eastern District of Texas for these individuals will likely involve air travel, hotel stays, multiple days of missed work, and significant expense. Electronic documents are stored in the cloud, and are not stored on servers in the Eastern District of Texas. Additionally, because Netflix maintains its research, design, and development documents (including source code) in the Northern District of California, all of the hard copy documentary evidence that may be relevant to the accused product lies in the

Northern District of California.[4]  Appx182-184 ¶¶ 6-7.  Netflix maintains no documentation in the Eastern District of Texas.  Appx182-183 ¶ 6.  Nor is there any reason to believe Plaintiffs have significant evidence or witnesses located in the Eastern District of Texas.

Judicial economy also favors transfer.  There is another pending case in the Northern District of California involving overlapping plaintiffs, the same defendant, and the same accused products, and that court is already familiar with the technology and the legal issues.

Taken together, these factors compel transfer even if venue is proper.

## B.    Netflix Has No Alternative but to Seek Relief in this Court

Netflix has diligently pursued resolution of its still-pending motion to dismiss or transfer at every opportunity, to no avail.  Netflix has encouraged the district court to rule on its pending venue and transfer motion in no less than eight separate filings since briefing on that motion was completed, but these requests have fallen on deaf ears:

---

[4]   While electronic evidence may easily be transported, physical location still matters under this Court's precedent.  *In re Google*, 949 F.3d at 1343.  In any event, the employees who would facilitate access to such documents are in the Northern District of California.

- Netflix filed its motion to dismiss or transfer on May 17, 2021. Appx006 (ECF No. 26).  The district court has not ruled on the motion or even scheduled a hearing.  Appx009 (ECF No. 78).

- Two days after briefing on that motion was completed, Netflix filed an expedited motion requesting a brief stay of the case pending the district court's resolution of Netflix's venue and transfer motion. Appx008 (ECF Nos. 62, 63).

- In the parties' joint motion for a docket control order, Netflix argued for a schedule where "all future deadlines are tied to the Court's ruling on Netflix's pending motion to dismiss or transfer."  Appx298-299.

- Since the completion of briefing on its motion to dismiss or transfer, Netflix has also filed three notices of supplemental authority trying to draw the district court's attention to the pending motion.  Appx009-010 (ECF Nos. 75, 79, 91).

- In the parties' August 30, 2021 joint claim construction and prehearing statement, Netflix requested that the district court "grant its motion for stay" and take up Netflix's motion to dismiss or transfer at a September 9, 2021 prehearing conference.  Appx326-327.

- On September 10, 2021, Netflix filed an expedited motion to vacate claim construction deadlines pending resolution of its motion to

dismiss or transfer.  Appx010 (ECF Nos. 98, 99).  On September 14, 2021, the district court denied Netflix's subsequent expedited motion to vacate all claim construction deadlines in a two-paragraph order omitting any mention of the pending venue and stay motions. Appx333.

Despite Netflix's best efforts, the district court has shown little interest in ruling on the merits of Netflix's venue and transfer motion or even on the stay motion.  Rather than ruling on Netflix's motion to dismiss or transfer, the district court has been arranging for the *Markman* hearing to proceed.  On the same day that the district court summarily denied Netflix's motion to vacate, it appointed a technical advisor (to be paid for by the parties) to assist the court with claim construction.  Appx333; *see* Appx331-332.

The district court has not ruled on the merits of the motion to stay or the merits of the venue and transfer motion, has refused to vacate claim construction deadlines, and is proceeding with an accelerated schedule set ***after*** Netflix had filed its motion to dismiss.  These actions amount to a pocket veto of Netflix's motion to stay.  The district court's refusal to address Netflix's venue and transfer motion and Netflix's motion to stay has left Netflix no recourse but to seek relief from this Court.  *See Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661-62 (1978) ("[W]here a district court persistently and without reason refuses to adjudicate a

case properly before it, the court of appeals may issue the writ [of mandamus] . . . ."); *In re SK hynix Inc.*, 835 F. App'x at 600 ("Applying the law of the United States Court of Appeals for the Fifth Circuit in cases arising from district courts in that circuit, this court has held that mandamus may be used to correct a patently erroneous denial of transfer or an arbitrary refusal to act on such request.") (citations omitted).

Because Netflix has been unable to obtain from the district court the relief to which it is entitled, Netflix asks that this Court enter the requested stay of all substantive proceedings until twenty-eight days after the district court resolves Netflix's pending motion to dismiss or transfer.

## C.    Irreparable Injury and the Balance of Hardships Favor Netflix

The district court's order denying Netflix's motion to vacate claim construction deadlines stated that denial would present "no inefficiency nor any prejudice to either side," because "[c]laim construction will be necessary wherever this case may be prosecuted."  Appx333.

The district court is incorrect. Netflix has and will continue to suffer prejudice from having to litigate this case in an improper and inconvenient venue.

First, the district court's September 14, 2021 order requires Netflix to pay a significant sum for the services of a technical advisor to assist the district court in preparing for a hearing that should have been taken off calendar pending the

resolution of Netflix's venue and transfer motion.  *See* Appx331.  The order suggests that the technical advisor is beginning work immediately, because it instructs the parties to provide courtesy copies of all claim construction materials to the technical advisor within two business days.  Appx331.  This contravenes this Court's express caution against district courts "forcing defendants 'to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket.'"  *In re TracFone*, 848 F. App'x at 900 (quoting *In re Google*, 2015 WL 5294800, at *1); *see also In re Nintendo*, 544 F. App'x at 941.

Unlike the Eastern District of Texas, it is not routine practice in the Northern District of California for a district court to appoint a technical advisor at the parties' expense to assist it with claim construction.  *See, e.g.*, Joshua R. Nightingale, *An Empirical Study on the Use of Technical Advisors in Patent Cases*, 93 J. Pat. & Trademark Off. Soc'y 400, 430 & fig.4 (2011).  Had the district court complied with this Court's precedent and transferred the case to the Northern District of California in a timely fashion, Netflix would not be forced to pay for the services of a technical advisor whose work will ultimately be irrelevant.

Second, Netflix has moved to dismiss this case for improper venue, not merely for a transfer.  Unlike a transfer, a dismissal ends the proceeding.  Faced with the increased costs of starting over in a proper venue, Plaintiffs might opt not

to litigate in California.[5]

Third, it is not just claim construction that is proceeding.  Although the
district court stated that it "expects to address the [transfer] motion in advance of
any claim construction hearing," Appx333, it continues, against this Court's
instructions, to proceed with the substantive aspects of this case.  But this case is
barreling not just toward *Markman* but toward the close of fact discovery in just
two months, on November 29, 2021, in accordance with the aggressive schedule
set by the district court ***after*** Netflix filed its motion to dismiss or transfer.[6]
Appx302.  Indeed, the court has set the case for trial in April 2022, only seven
months from now, and has yet to rule on the very first substantive motion in the
case.  Appx300.  And even when we do get the magistrate judge's Report and
Recommendation, it will most likely be months more before the parties get a ruling
from the district court.  Netflix is prejudiced by having to litigate the advanced

---

[5]   While Netflix has filed a declaratory judgment action in California on these
patents (an action currently stayed pending the Eastern District of Texas
proceeding), Plaintiffs could obviate that action by filing a covenant not to sue.

[6]   The ongoing substantive proceedings and attendant irreparable harm to Netflix
in this case distinguish it from *In re Bose*, 848 F. App'x 426, 427 (Fed. Cir. 2021),
where the only deadlines *Bose* sought to stay were related to *Markman* briefing,
and the district court had already stayed all discovery other than venue,
jurisdictional, and claim construction discovery.  Here, by contrast, fact discovery
is plowing forward and rapidly coming to a close, and Netflix continues to be
prejudiced by ongoing substantive proceedings when this case should be stayed
pending a decision on the threshold issues of venue and transfer.

stages of a case before resolving even the most preliminary issues.  Because a

motion to dismiss is pending, there is not yet any answer in the case and no

defenses or counterclaims have yet been pled.  The district court's schedule has

also forced the parties to exchange infringement and invalidity contentions and

perform other substantive work while Netflix's assertion of improper and

inconvenient venue remains unaddressed and before all the claims and defenses in

the case have even been pled.

Netflix has suffered and will continue to suffer prejudice due to the district

court's continued insistence on proceeding with an accelerated case schedule.  For

example, the district court's aggressive schedule may make it impossible to take

discovery on any defenses or counterclaims that might be raised in the case.  It

may also deprive Netflix of the right to meritorious IPR proceedings on Plaintiff's

asserted patents.  Though Netflix has filed petitions for IPR on four out of five of

Plaintiffs' asserted patents, the district court's accelerated schedule poses a

significant risk that the Board will deny institution of Netflix's petitions under

*Apple Inc. v. Fintiv, Inc.* in a decision that will be unreviewable on appeal.

IPR2020-00019, 2020 WL 2126495 (PTAB Mar. 20, 2020) (designated

precedential May 5, 2020); *see* 35 U.S.C. § 314(d); *Cuozzo Speed Techs., LLC v.

Lee*, 136 S. Ct. 2131, 2139 (2016).

Under the PTAB's precedential decision in *Fintiv*, "[i]f the court's trial date

is earlier than the projected statutory deadline, the Board generally has weighted

this fact in favor of exercising authority to deny institution" of an IPR.  2020 WL

2126495, at *4; *see also NHK Spring Co. v. Intri-Plex Techs., Inc.*, IPR2018-

00752, 2018 WL 4373643, at *7 (PTAB Sept. 12, 2018) (designated precedential

May 7, 2019) (concluding that "instituting a trial . . . would be an inefficient use of

Board resources" when district court scheduling order set trial on the same prior art

and arguments for six months ahead of anticipated IPR hearing).

The district court's refusal to follow the law in setting a substantive case

schedule may prompt the PTAB to believe there is nothing to be gained by

instituting Netflix's IPRs despite their merit.  By contrast, the Northern District of

California has already shown a willingness to stay the parallel litigation pending

resolution of the IPRs and would likely set a more reasonable case schedule that

would not foreclose Netflix's access to meritorious IPR proceedings under *Fintiv*.

Indeed, it has already partially stayed Plaintiffs' parallel proceedings against

Netflix pending a decision from the PTAB.  Appx032 (ECF No. 161).  Because

venue is unquestionably improper in the Eastern District of Texas, the imposition

of that court's aggressive case schedule imposes significant prejudice on Netflix

through deprivation of a substantial right Netflix would otherwise have to a

meritorious IPR proceeding.

By contrast, there is no prejudice to Plaintiffs because they have no right to

litigate in the Eastern District of Texas in the first instance.  Plaintiffs have

identified no reason this case must be resolved on a compressed schedule that

ignores the normal rules of litigation.  Nor have they sought a preliminary

injunction or otherwise indicated some commercial need for early resolution of this

dispute.  Indeed, Plaintiffs do not even practice the patents.  And the parties have

been litigating related issues in California since March 13, 2020.  *See* Appx014

(ECF No. 1).  But even assuming the venue issues in this case were ultimately

resolved in Plaintiffs' favor, Plaintiffs have no right to continue litigating the

merits of this case in the Eastern District of Texas until venue is decided.  *See, e.g.*,

*In re Apple*, 979 F.3d at 1337.

The district court's practice is a violation of this Court's directive that

district courts may not conduct substantive proceedings (including *Markman*

hearings) until any venue or transfer motions have been resolved.  *See In re SK*

*hynix*, 835 F. App'x at 601 (directing district court to "stay all proceedings

concerning the substantive issues of the case," including the *Markman* hearing,

"until such time that it has issued a ruling on" the pending motion to transfer); *In*

*re TracFone*, 848 F. App'x at 901 (ordering the district court to "stay all

proceedings until such time that it issues a ruling on the motion to transfer . . . .");

*In re Apple*, 979 F.3d at 1337.

If the district court elects to set such expedited case schedules, equity

demands that it rule on motions to dismiss or transfer and other threshold issues in a timely manner. And precedent demands that it stay substantive proceedings until it does so, and certainly not accelerate those proceedings before an answer has even been filed and the case is at issue.

### D.    The Public Interest Favors a Stay

The situation Netflix faces is not an isolated problem. Certain district courts routinely flout this Court's directive to give venue and transfer motions "top priority." Instead, those courts regularly treat venue as an afterthought, postponing rulings on venue motions and motions to transfer while substantive proceedings continue despite this Court's express orders. *See, e.g.*, *Express Mobile, Inc. v. Atlassian Corp. plc*, No. 20-cv-00805-ADA (W.D. Tex.), ECF Nos. 48, 67, 73 (delaying decision on motion to transfer until three months after briefing on transfer motion was completed and ruling one day before the scheduled *Markman* hearing); *Brite Smart Corp. v. Google Inc.*, No. 14-cv-760-JRG-RSP (E.D. Tex.), ECF Nos. 51, 129, 138, 151, 152 (proceeding with discovery and *Markman* hearing for seven months after briefing on motion to transfer was complete, and deciding transfer motion only after ordered to do so by the Federal Circuit); *Ikorongo Tex. LLC v. Uber Techs., Inc.*, No. 20-cv-843-ADA (W.D. Tex.), ECF Nos. 48, 53, 60, 63, 64 (cancelling *Markman* hearing on the same day it was scheduled to move forward, denying motion to transfer the next day, and issuing

*Markman* order seven days later).  Indeed, in 2019, Netflix was sued in the Eastern District of Texas based on a similar theory of venue alleged by Plaintiffs in this case.  *See* Compl., *Personalized Media Commc'ns, LLC v. Google LLC*, No. 19-cv-00090-JRG (E.D. Tex.), ECF No. 1.  The district court refused to rule on Netflix's motion to dismiss for over seven and a half months and issued a claim construction order during that time before Netflix and PMC ultimately stipulated to transfer the case to the Southern District of New York.  *Id.* ECF Nos. 105, 185, 194.  This practice undermines the purpose of this Court's rule requiring that a district court "address whether it is a proper and convenient venue before addressing any substantive portion of the case."  *In re Nintendo*, 544 F. App'x at 941.  Announcing a venue ruling alongside a claim construction violates the spirit of the rule—to stop substantive proceedings until the parties and the court know where the case belongs.  And here, it wouldn't even comply with the letter of the rule.  Even if the magistrate judge were to "address" the venue issue, any ruling by the district court on the venue motion is months away and will almost certainly not happen before the scheduled claim construction hearing.

The *Nintendo* rule requiring that venue be resolved first serves to preserve judicial and party resources.  Allowing substantive proceedings like fact discovery and claim construction briefing to continue perpetuates the opposite effect, particularly when, as here, substantive work in the transferor forum does not

translate to the transferee forum. And it also ensures that parties are not haled into court in improper or inconvenient forums and forced to litigate there for years.

In light of *Fintiv*, the Texas practice of accelerated case schedules with unrealistically early *Markman* hearings and trial dates also provides patentees an end run around the IPR regime created by Congress for faster and less expensive resolution of patent validity. This has been a growing problem for the patent system. Indeed, discretionary IPR institution denials on procedural grounds have been rapidly increasing over the past few years. *See PTAB Procedural Denials and the Rise of § 314*, UNIFIED PATENTS (May 13, 2020), https://www.unifiedpatents.com/insights/2020/5/13/ptab-procedural-denial-and-the-rise-of-314 ("[E]ven as the number of PTAB filings has fallen and the institution rate has dropped to 54% [in 2020], discretionary denials as a percentage of institution denials has risen dramatically, and are on pace to almost double again [in 2020]."); *see id.* ("[I]n 2019, the Board denied roughly 11.8% of all institutions regardless of merit—up from 9.1% in 2018 and just 5.3% in 2017 . . . .").

The practice of setting unreasonably aggressive case schedules, combined with the *Fintiv* rules, thus "encourages gamesmanship in terms of when parties file, on which patents they file, and where, . . . ." *Id.*; *see also, e.g.*, *Express Mobile, Inc. v. Atlassian Corp. PLC*, No. 20-CV-00805-ADA, 2021 WL 3355375, at *9 (W.D. Tex. Aug. 2, 2021) (noting court's standard practice to "set[] patent cases

for trial fifty-two weeks after *Markman* hearings"). Indeed, in this case the court has set the trial date less than six months after the scheduled *Markman* hearing and less than a year after the case was filed. Appx010 (after ECF No. 107), Appx046, Appx300.

To effectively cut off a defendant's access to a meritorious IPR proceeding, a patentee need only "file first in districts with aggressive time-to-trial that are unlikely to stay cases in light of IPRs . . . ." *See PTAB Procedural Denials*, *supra*. Though these initial case schedules are unrealistic and frequently amended, court delays following the institution decision usually come too late to restore the defendant's right to a meritorious IPR proceeding, as was the case in *NHK Spring*. *Compare, e.g.*, Decision Denying Institution of *Inter Partes* Review, *Teso LT, UAB v. Luminati Networks Ltd.*, No. IPR2021-00122, Paper 12, at 8 (PTAB Apr. 20, 2021) (discretionary denial of institution based on "related jury trial in the 396 district court case [that] is currently scheduled to occur approximately ten months before a final [Board] determination"), *with* Orders, *Bright Data Ltd. v. code200, UAB*, No. 19-cv-00396-JRG (E.D. Tex.), ECF Nos. 223 (June 9, 2021) & 249 (Aug. 25, 2021) (granting two motions to continue trial after IPR institution denial); *see* Stipulation and Order, *Intri-Plex Techs., Inc. v. NHK Int'l Corp.*, No. 17-cv-01097-EMC (N.D. Cal. Nov. 21, 2018), ECF No. 153 (amending scheduling order after IPR institution denial).

A district court that (intentionally or unintentionally) delays resolution of a venue or transfer motion until near or after an IPR institution decision only exacerbates this problem. In cases like this one, by the time the district court resolves whether it should hear the case at all, the defendant may well be deprived of meritorious consideration of its IPR petitions based on a case schedule that no longer applies after a dismissal or transfer. The automatic and early issuance of expedited case schedules, combined with the district courts' failure to promptly rule on venue and transfer motions, incentivize patentees to file suits in Texas that do not belong there, engage in venue discovery, and delay resolution of transfer and venue motions as long as possible until the PTAB has denied institution of any pending IPR petitions.

This Court should stay not just the claim construction hearing but all substantive proceedings in this case. And given the long history of last-minute venue orders in the Texas district courts, coupled with Netflix's overwhelming case on the merits, it should stay substantive proceedings until twenty-eight days after a venue ruling, to give Netflix time to seek mandamus if necessary.

## VII.  CONCLUSION

Netflix respectfully requests that the Court direct the district court to stay all substantive proceedings in this case until twenty-eight days after its resolution of Netflix's pending motion to dismiss or transfer.

Dated:  September 24, 2021   Respectfully submitted,

            DURIE TANGRI LLP

          By:

              */s/ Mark A. Lemley*

          Mark A. Lemley
          Attorney for Petitioner

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number**  21-

**Short Case Caption**  In re Netflix, Inc.

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  09/24/2021

by ☐  U.S. Mail  ☐  Hand Delivery  ☑ Email  ☐ Facsimile
☐ Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Adrienne Elizabeth Dominguez | adrienne.dominguez@hklaw.com |
| Austin Chun Teng | austin.teng@hklaw.com |
| James Michael Heinlen | michael.heinlen@hklaw.com |
| Jennifer Leigh Truelove | jtruelove@mckoolsmith.com |
| Justin S. Cohen | justin.cohen@hklaw.com |

☑  Additional pages attached.

Date: 09/24/2021

Signature:  /s/ Mark A. Lemley

Name:  Mark A. Lemley

*In re* Netflix, Inc.

21-

CERTIFICATE OF SERVICE (*Cont'd*)

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Richard Lawrence Wynne, Jr | richard.wynne@hklaw.com |
| Robert K. Jain | rjain@hopkinscarley.com |
| Samuel Franklin Baxter | sbaxter@mckoolsmith.com |
| Bruce S Sostek | bruce.sostek@tklaw.com |

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This petition complies with the type-volume limitation of Federal

Rule of Appellate Procedure 21(d)(1).  This petition contains 7,576 words,

excluding the parts of the petition exempted by rule.

2.      This petition complies with the typeface requirements of Federal Rule

of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1 and

the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This

petition has been prepared in a proportionally spaced typeface using Microsoft

Word in Times New Roman, 14-point font.


Dated:  September 24, 2021                    DURIE TANGRI LLP


                                        By:_____/s/ Mark A. Lemley_____

                                        Mark A. Lemley
                                        Attorney for Petitioner